IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIMOTHY WILLIAMS, et al.,

    Plaintiffs,

      v.

CIVIL ACTION FILE
NO. 1:13-CV-3567-TWT

COBB COUNTY SHERIFF'S
OFFICE, et al.,

    Defendants.

## OPINION AND ORDER

This is a civil rights case arising out of the June 9, 2011 arrest and subsequent prosecution of the Plaintiff Timothy Williams. It is before the Court on the Defendants P.D. Chesney, Neil Warren, and the Cobb County Sheriff's Office's Motion to Dismiss [Doc. 24]. For the reasons set forth below, the Motion to Dismiss [Doc. 24] is GRANTED in part and DENIED in part.

## I. Background

The Plaintiff Timothy Williams resides in Georgia's Thirteenth Congressional District, which is represented by Congressman David Scott.[1] The Plaintiff has been a critic of Scott, questioning him on policy matters as well as certain allegations

---

[1]    Am. Compl. ¶ 20.

reported by media outlets.[2] On June 8, 2011, Scott's office contacted the Plaintiff to set up a meeting.[3] The stated purpose was to discuss a grant proposal for a solar project that the Plaintiff had been trying to secure.[4] On June 9, 2011, the Plaintiff went to Scott's office for the meeting.[5] After roughly five minutes of discussion, Scott declared that the meeting was over.[6] Then, six officers – including the Defendant P.D. Chesney – detained, interrogated, and arrested the Plaintiff.[7]

In the arrest warrant, the Plaintiff was accused of making "terroristic threats" to Scott over Facebook.[8] Specifically, the arrest warrant referenced a statement made by the Plaintiff on Facebook in response to a post made by Scott: "This is not justice, what happened to the courts of laws. If rights are denied and justice comes from the barrel of the bullet, be careful the rooster will come to roost. The culture of our nations is violence."[9] This, however, was an excerpt of a longer passage written by the

---

[2]     Am. Compl. ¶ 20.

[3]     Am. Compl. ¶ 22.

[4]     Am. Compl. ¶¶ 20, 23.

[5]     Am. Compl. ¶ 25.

[6]     Am. Compl. ¶ 29.

[7]     Am. Compl. ¶ 29.

[8]     Am. Compl. ¶ 30.

[9]     Am. Compl. ¶ 30.

Plaintiff in response to an article posted by Scott about the killing of Osama Bin Laden.[10] The Plaintiff was expressing his opinion regarding the propriety of executing a person without a trial.[11]

The second basis for the Plaintiff's arrest was identity fraud.[12] The Plaintiff had multiple forms of identification on his person, and they reflected two different names.[13] When the Plaintiff was born he had been given the name Milton Burley, and that was the name printed on his birth certificate.[14] The Plaintiff was initially unaware of this.[15] By the time the Plaintiff realized this, he had already received multiple academic degrees and had served in the Army under the name of Timothy Williams.[16] Consequently, the Plaintiff continued to go by the name Timothy Williams, although his birth name was used on certain legal documents.[17]

---

[10]     Am. Compl. ¶ 31.

[11]     Am. Compl. ¶ 31.

[12]     Am. Compl. ¶ 35.

[13]     Am. Compl. ¶ 35.

[14]     Am. Compl. ¶ 15.

[15]     Am. Compl. ¶ 15.

[16]     Am. Compl. ¶ 17.

[17]     Am. Compl. ¶ 18.

After the Plaintiff's arrest, the officers searched the Plaintiff's vehicle[18] and found a disassembled gun.[19] The Plaintiff was then also charged with possession of a firearm by a convicted felon.[20] The Plaintiff, however, had never been convicted of a felony.[21] The Plaintiff was then taken to jail, and his request to be released on bond was initially denied.[22] After forty-five days, the Plaintiff's lawyer and the District Attorney agreed to a bond and the Plaintiff was released.[23] However, the Plaintiff was then placed under house arrest for over four-hundred days.[24] On December 31, 2012, the charges against the Plaintiff were dismissed.[25]

The Plaintiff brought suit against multiple parties, including the Cobb County Sheriff's Office, Deputy P.D. Chesney, and Cobb County Sheriff Neil Warren. The Plaintiff initially asserted section 1983 claims for false arrest, false imprisonment, malicious prosecution, and first amendment retaliation, as well as state law claims for

---

[18]    Am. Compl. ¶ 36.

[19]    Am. Compl. ¶ 37.

[20]    Am. Compl. ¶ 38.

[21]    Am. Compl. ¶ 39.

[22]    Am. Compl. ¶ 42.

[23]    Am. Compl. ¶¶ 43-44.

[24]    Am. Compl. ¶ 45.

[25]    Am. Compl. ¶ 50.

false imprisonment, malicious prosecution, and conspiracy.[26] In his Response Brief, the Plaintiff only pursues his section 1983 claims for malicious prosecution and first amendment retaliation, as well as his state law claims for malicious prosecution and conspiracy to engage in malicious prosecution. The Plaintiff does not pursue any of his claims against the Cobb County Sheriff's Office.[27] The Defendants P.D. Chesney, the Cobb County Sheriff's Office, and Neil Warren move to dismiss.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[28] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is

---

[26] Additionally, the Plaintiff's wife Diosia Williams asserted a claim for loss of consortium. She was diagnosed with multiple sclerosis in 1999, (Am. Compl. ¶ 14), and her sole caretaker is the Plaintiff Timothy Williams. (Am. Compl. ¶ 13.) This claim is derivative of the Plaintiff Timothy Williams' tort claims. See White v. Hubbard, 203 Ga. App. 255, 256 (1992) ("[W]here the injured person and the spouse combine their separate claims in one suit . . . it has been held that the loss of consortium claim is a 'derivative' claim.").

[27] Accordingly, the Court will dismiss the Plaintiff's section 1983 and state law false imprisonment claims, as well as all claims against the Cobb County Sheriff's Office.

[28] Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).

extremely "remote and unlikely."[29] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[30] Generally, notice pleading is all that is required for a valid complaint.[31] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[32]

### III. Discussion

#### A. Section 1983

To establish a malicious prosecution claim under section 1983, "the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution."[33] The "constituent elements of the common law tort of malicious prosecution include[]: (1) a criminal prosecution instituted or continued by the present

---

[29]     Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[30]     See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[31]     See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

[32]     See Erickson v. Pardus, 551 U.S. 89, 93 (2007).

[33]     Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003).

defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."[34]

In moving to dismiss this claim, the Defendants argue that based on the Plaintiff's allegations, there was probable cause to prosecute the Plaintiff for identity fraud.[35] Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[36] According to O.C.G.A. § 16-10-25, the statute cited by the Defendants, "[a] person who gives a false name . . . to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity . . . is guilty of a misdemeanor." Here, based on the Plaintiff's allegations, no prudent person would believe that the Plaintiff had the requisite intent to mislead the arresting officers. When he arrived for his meeting with Congressman Scott, the Plaintiff allegedly signed in as "Timothy Williams aka 'M.B.'"[37] He even provided identification which bore the name "Milton

---

[34]     Id. at 882.

[35]     In their Motion to Dismiss, the Defendants do not seriously argue that there was probable cause to prosecute the Plaintiff for the remaining charges.

[36]     Id.

[37]     Am. Compl. ¶ 27.

Burley."[38] When asked why he possessed identification that reflected a name other than Milton Burley, the Plaintiff allegedly clarified that Milton Burley was his legal name, and that Timothy Williams was an alias that he had used from a very young age.[39]

In response, the Defendants argue that the facts in this case are similar to those in <u>Stanley v. State</u>[40] where the Georgia Court of Appeals found that there was probable cause to arrest the defendant for identity fraud. This case is nothing like <u>Stanley</u>. There, the police had received information from a confidential informant that the defendant – named Wilbur Stanley – was trafficking drugs.[41] When confronted, the defendant told three officers that his name was Steven Stanley.[42] Even more, his boarding pass bore the name Gene Hudson.[43] The officers arrested him and searched his bag, which contained illicit drugs and identification that showed the name Wilbur Stanley.[44] Contrary to the Defendants' assertion, the <u>Stanley</u> court did not find that

---

[38]     Am. Compl. ¶ 26.

[39]     Am. Compl. ¶ 34.

[40]     213 Ga. App. 95 (1994).

[41]     See <u>id.</u> at 96.

[42]     See <u>id.</u>

[43]     See <u>id.</u>

[44]     See <u>id.</u>

there was probable cause simply because the defendant used an alias different from his legal name. There was probable cause because he actively tried to conceal his legal name. By contrast, here, the Plaintiff allegedly expressed – at the start of questioning – that Timothy Williams was not his legal name.

The Defendants then argue that they are nevertheless protected by qualified immunity. There is no section 1983 liability if an officer is entitled to qualified immunity.[45] To receive this immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[46] Because the Defendants satisfy this requirement,[47] "the burden shifts to the [P]laintiff to show that qualified immunity is not appropriate."[48] The Plaintiff must

---

[45]    See Pearson v. Callahan, 555 U.S. 223, 231 (2009).

[46]    Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (internal quotation marks omitted).

[47]    See, e.g., Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) ("[I]t is clear that Officer Stanfield was acting within the course and scope of his discretionary authority when he arrested Vinyard and transported her to jail."). The Plaintiff argues that the arrest was not discretionary because the Defendants were *required* to comply with the Fourth Amendment's probable cause restriction. This is without merit. That the arresting officers allegedly exercised their discretion in a manner that infringed upon the Plaintiff's Fourth Amendment rights does not make the arrest any less discretionary. Under the Plaintiff's logic, no officer would be entitled to qualified immunity for an arrest that is ultimately found impermissible.

[48]    Id. (internal quotation marks omitted).

show that the alleged constitutional violation was "clearly established."[49] For this, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[50] However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent."[51]

Here, the Plaintiff's allegations, if true, suggest that it was apparent that there was no probable cause to arrest the Plaintiff for identity fraud. Indeed, other than the fact that the Plaintiff used an alias in addition to his legal name, the Defendants point to nothing else in the Amended Complaint that supports their assertion that a reasonable officer could have believed that the Plaintiff was trying to mislead the officers. In response, the Defendants first argue that the Plaintiff has failed to furnish a case where a court held, under similar circumstances, that a defendant lacked probable cause to arrest a party for identity fraud. Although citing to a case with similar facts is one method by which a plaintiff may defeat qualified immunity, it is by no means necessary. The United States Supreme Court has made clear that "a

---

[49]    See Pearson, 555 U.S. at 232.

[50]    Anderson v. Creighton, 483 U.S. 635, 640 (1987).

[51]    Id.

general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful."[52] The Defendants then argue that an officer need not prove every element of an offense to obtain qualified immunity. True, but the Plaintiff's argument is that there was *no* basis for believing that an essential element of the offense was satisfied: that the Plaintiff intended to mislead the officers. If the Plaintiff's allegations are true, then no reasonable officer could have believed that probable cause existed to arrest the Plaintiff for identity fraud. Accordingly, the Defendants' motion to dismiss the Plaintiff's section 1983 malicious prosecution claim, insofar as it is asserted against the Defendant Chesney in his individual capacity, should be denied at this stage of the litigation.

However, the Plaintiff cannot pursue his claim against the Defendants in their official capacity. Generally, "[a] suit against a public official in his official capacity is . . . treated as a suit against the local government entity he represents."[53] Here, it is immaterial whether the Defendants represented the state or their county "because [the Plaintiff's] claim fails under either view."[54] To establish section 1983 liability against

---

[52]     United States v. Lanier, 520 U.S. 259, 271 (1997).

[53]     Molette v. Georgia, 469 Fed. Appx. 766, 768 (11th Cir. 2012) (internal quotation marks omitted).

[54]     Id. at 768.

the county, the Plaintiff must "identify a county policy - meaning either an officially promulgated county policy or an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county - that caused his injuries."[55] The Plaintiff's Amended Complaint contains no such allegation. If, however, the Defendants represented the state, then the Plaintiff's claim still fails because there is no cognizable section 1983 claim against state officials in their official capacity.[56]

## B. State Law Claims

The Defendants argue that they are entitled to official immunity against the Plaintiff's state law claims. Under the Georgia Constitution, "all officers and employees of the state or its departments and agencies . . . may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions."[57] Piercing official immunity requires a showing of *actual* malice, which means "a deliberate intention to do wrong,"[58] or "the

---

[55]     Id. (internal quotation marks omitted).

[56]     See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

[57]     GA. CONST. Art. I, § 2, ¶ IX(d).

[58]     Merrow v. Hawkins, 266 Ga. 390, 391 (1996).

intent to cause the harm suffered by the plaintiffs."[59] This requires "more than harboring bad feelings about another."[60] The "ill will must also be combined with the intent to do something wrongful or illegal."[61]

Here, assuming the Plaintiff's allegations to be true – as the Court must – the Plaintiff has made a plausible allegation of actual malice as to the Defendant Chesney. The Plaintiff alleges that the prosecution was initiated with no factual basis to support any of the charges, thus giving rise to a plausible inference that the arresting officers intended to commit a wrongful act. This case is analogous to <u>Bateast v. Dekalb County</u>,[62] where the Georgia Court of Appeals denied the defendants' request, on summary judgment, for official immunity against false arrest and malicious prosecution claims. There, the plaintiff was arrested for allegedly giving the defendant officers a false name.[63] The plaintiff submitted evidence that she had given the officers her real name, and that she provided the officers with identification which reflected

---

[59]   <u>Marshall v. Browning</u>, 310 Ga. App. 64, 67 (2011).

[60]   <u>Adams v. Hazelwood</u>, 271 Ga. 414, 415 (1999).

[61]   <u>Id.</u>

[62]   258 Ga. App. 131 (2002).

[63]   <u>See id.</u> at 132.

her real name.[64] In siding with the plaintiff, the Georgia of Appeals concluded that the plaintiff's facts "would allow a jury to make a reasonable inference that [the defendant] Officers . . . proceeded in their arrest of [the plaintiff] despite their knowledge that she had not committed the crimes for which they accused her, thereby deliberately intending to do a wrongful act."[65] Accordingly, the Defendants' motion to dismiss the Plaintiff's state law malicious prosecution claim, insofar as it is asserted against the Defendant Chesney in his individual capacity, should be denied. The Plaintiff does not dispute that his state law malicious prosecution claim against the Defendants in their official capacity must be dismissed. Additionally, Georgia law does not recognize an independent civil conspiracy cause of action, and so the Plaintiff's civil conspiracy claim must also be dismissed.[66] The Plaintiff fails to allege any facts showing that the Defendant Sheriff Warren was personally involved in any way in the arrest or prosecution of the Plaintiff.

---

[64]     See id.

[65]     Id.

[66]     See Savannah College of Art & Design, Inc. v. School of Visual Arts of Savannah Inc., 219 Ga. App. 296, 297 (1995) ("Where it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action.").

**IV. Conclusion**

For these reasons, the Court GRANTS in part and DENIES in part the Defendants P.D. Chesney, Neil Warren, and the Cobb County Sheriff's Office's Motion to Dismiss [Doc. 24]. It is GRANTED as to the Defendants Warren and the Cobb County Sheriff's Office. It is DENIED as to the Defendant Chesney.

SO ORDERED, this 26 day of June, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge